## Spannuth v. Spannuth

*Metzger & Wickersham*, and *Soloman Hurwitz*, for exceptant.

*P. W. Fetterhoff*, for respondent.

SHEELY, P. J., specially presiding, October 11, 1938.— This is a libel in divorce charging respondent with cruel and barbarous treatment, indignities to the person, and

impotency. After the subpœna in divorce was served upon respondent, libellant presented his petition to the court praying for an order requiring respondent to submit to a physical examination for the purpose of establishing the truth or falsity of the charge of impotency. This petition was dismissed. See Spannuth v. Spannuth, 42 Dauph. 33 (1935).

Testimony was then taken before a master who has filed a report finding that libellant failed to substantiate any of the charges contained in the libel and recommending that the libel be dismissed. Libellant has filed 18 exceptions to the report, which are now before the court for adjudication.

It is unnecessary to discuss the testimony offered in support of the charges of cruel and barbarous treatment and indignities to the person as it was clearly insufficient to sustain those charges, and libellant does not now press them. Libellant does contend, however, that the charge of impotency was sufficiently proved and that the court erred in refusing to compel respondent to submit to a physical examination. It is necessary for us to consider the testimony offered to support this charge.

The parties to this action were married on November 21, 1933, when libellant was 69 years of age and respondent 60 years of age. They became acquainted about three weeks before their marriage when respondent was employed by libellant as a housekeeper. Prior to their marriage, libellant made improper advances to respondent, but was unsuccessful. After the marriage the parties lived together until August 23 or 24, 1934, when they separated. Their married life was apparently unhappy due to a number of causes which are not particularly pertinent to this inquiry.

In support of the charge of impotency, libellant, who had been previously married and whose first wife had been dead for about two years, testified that when they first attempted to have intercourse respondent warned him that they might have some difficulty, and that he

found it utterly impossible to have intercourse with or to penetrate respondent. Respondent then, and upon the occasion of subsequent unsuccessful attempts, accused libellant of "having lost his manhood." Libellant called a physician who had examined him prior to the hearing on August 20, 1936, and who testified that he found no gross evidence of pathology around libellant's genital organs and that from his examination of libellant it was his opinion that libellant was not impotent at that time or at the time of his marriage three years prior thereto.

Respondent testified that she had been twice previously married and that she had borne two children prior to 1916. She admitted that it had been impossible for her and libellant to have intercourse, expressing herself by saying: "You can't very well be a wife to a man that is all in the head." She further testified that she was normal and healthy and would have been able to have intercourse if libellant had been capable.

Respondent also called as a witness, J. M. Kendig, who testified that libellant offered him money to get respondent into a compromising position so that libellant could "catch" them, and that libellant told him that their troubles had been due to his "loss of manhood." The witness further testified that libellant had offered to pay him to stay away from the master's hearing.

The master concluded that the case was governed by Farnsworth v. Farnsworth, 75 Pa. Superior Ct. 400 (1921), in which it was said:

"To warrant granting a divorce for the reason alleged, it should appear by affirmative proof or by fair inference from facts developed in the case, that the cause alleged actually exists, and when, as in this case, the testimony of the libellant is unsupported in any way and positively denied by the respondent, who is the mother of two children by a former husband, and who insists under oath that she is a healthy, normal woman, the case presented is so lacking in proof that the decree of the court must be affirmed."

The case of Farnsworth v. Farnsworth, supra, however, is very different from the present case. There the parties had lived together for 15 years and the husband's testimony that it was impossible for them to have intercourse was directly contradicted by that of the wife who testified that they did have frequent normal intercourse during their entire married life. There was no other testimony in the case except some corroboration that the parties occupied separate bedrooms and that the husband mistreated the wife. The lower court had refused the divorce on the ground of laches.

In the present case, libellant's testimony that it was impossible for the parties to have intercourse is supported by the testimony of respondent herself. That fact must, therefore, be accepted as being true. Libellant has produced competent medical testimony to corroborate his testimony that the difficulty was not due to his own incapacity. The fair inference from these facts is that the difficulty was due to the impotency of respondent.

The burden was upon libellant to prove that at the time of the contract of marriage respondent was, and still is, naturally and incurably impotent and is, therefore, incapable of procreation. See Wilson v. Wilson, 126 Pa. Superior Ct. 423 (1937). By the very nature of the charge there can be but little available testimony to prove or disprove the charge of impotency. It is hardly conceivable that there could be any testimony offered other than that of the parties themselves (including admissions made by the parties) and medical testimony. Libellant in this case has offered all the testimony that could reasonably be within his power to produce, and we believe that by that testimony he has established a prima facie case sufficient to warrant a decree of divorce unless overcome by respondent's testimony.

Respondent relies entirely upon her unsupported statement that she is a healthy and normal woman, and that she had borne two children by a former husband. Her accusation that libellant was impotent is uncorroborated

and it is directly contradicted by the testimony of Dr. Plowman. It is within the power of respondent to produce testimony that will absolutely and positively rebut the charge against her, but she has not seen fit to produce it. While we will not compel her to submit to a physical examination for the purpose of revealing evidence in support of her husband's charge against her, her failure to produce medical testimony under the circumstances in this case may be the basis of an inference that such testimony, if produced, would be unfavorable to her: Steel et al. v. Snyder et ux., 295 Pa. 120, 127 (1929) ; Bissell v. Bissell, 93 N. J. Eq. 537, 117 Atl. 252 (1922).

We have not attached much weight to the testimony of J. M. Kendig because we were not impressed by his testimony. He and libellant were only slight acquaintances and, if his testimony be true, libellant was trying to employ him to "frame" respondent. While such conduct would be most reprehensible and might seriously affect the credibility of libellant's testimony, it would be extremely unlikely that under such circumstances libellant would refer to his own physical handicaps—especially one of this nature. Furthermore, the testimony of Dr. Plowman would indicate that a statement of that nature, if made, would have been incorrect.

Considering the entire record, with the admitted inability of the parties to have intercourse, the medical testimony on the part of libellant, and the absence of corroborating testimony for respondent, we think that libellant has established a case entitling him to a decree of divorce. However, it is possible that the respondent may have been under the impression that the refusal of this court to compel her to submit to a physical examination protected her from any unfavorable inference by reason of her failure to produce such evidence. We will, therefore, refer the report back to the master for additional testimony from either party who may wish to produce it. Respondent may also recall Dr. Plowman for further examination if she so desires.

And now, October 11, 1938, it is ordered and decreed that the report of the master in the above case be referred back to the master for the purpose of taking additional testimony along lines indicated in this opinion.